# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

AT&T ENTERPRISES, LLC,

    Plaintiff,

        v.

FRONTIER COMMUNICATIONS ILEC HOLDINGS LLC (f/k/a FRONTIER COMMUNICATIONS ILEC HOLDINGS INC.), CITIZENS TELECOMMUNICATIONS COMPANY OF CALIFORNIA, INC., CITIZENS TELECOMMUNICATIONS COMPANY OF ILLINOIS, CITIZENS TELECOMMUNICATIONS COMPANY OF MINNESOTA, LLC, CITIZENS TELECOMMUNICATIONS COMPANY OF NEBRASKA, CITIZENS TELECOMMUNICATIONS COMPANY OF NEVADA, CITIZENS TELECOMMUNICATIONS COMPANY OF TENNESEE LLC, CITIZENS TELECOMMUNICATIONS COMPANY OF THE WHITE MOUNTAINS, INC., CITIZENS TELECOMMUNICATIONS COMPANY OF UTAH, CITIZENS TELECOMMUNICATIONS COMPANY OF WEST VIRGINIA, CITIZENS UTILITIES RURAL COMPANY, INC., COMMONWEALTH TELEPHONE COMPANY LLC, FRONTIER COMMUNICATIONS OF AMERICA, INC., FRONTIER COMMUNICATIONS OF BREEZEWOOD, LLC, FRONTIER COMMUNICATIONS OF CANTON, LLC, FRONTIER COMMUNICATIONS OF DEPUE, INC., FRONTIER COMMUNICATIONS OF GEORGIA, LLC, FRONTIER COMMUNICATIONS OF ILLINOIS, INC., FRONTIER COMMUNICATIONS OF INDIANA LLC, FRONTIER COMMUNICATIONS OF IOWA, LLC, FRONTIER COMMUNICATIONS OF LAKESIDE, INC., FRONTIER COMMUNICATIONS OF LAKEWOOD, LLC, FRONTIER COMMUNICATIONS OF MICHIGAN, INC., FRONTIER COMMUNICATIONS OF MINNESOTA, INC., FRONTIER COMMUNICATIONS OF MISSISSIPPI LLC,

Case No. 1:24-cv-5980

FRONTIER COMMUNICATIONS OF MT. PULASKI, INC., FRONTIER COMMUNICATIONS OF ORION, INC., FRONTIER COMMUNICATIONS OF OSWAYO RIVER, LLC, FRONTIER COMMUNICATIONS OF PENNSYLVANIA, LLC, FRONTIER COMMUNICATIONS OF THE CAROLINAS LLC (f/k/a FRONTIER COMMUNICATIONS OF THE CAROLINAS, INC.), FRONTIER COMMUNICATIONS OF THE SOUTH, LLC (f/k/a FRONTIER COMMUNICATIONS OF LAMAR COUNTY, LLC), FRONTIER COMMUNICATIONS OF THE SOUTHWEST, INC., FRONTIER COMMUNICATIONS OF THORNTOWN LLC (f/k/a FRONTIER COMMUNICATIONS OF THORNTOWN INC.), FRONTIER COMMUNICATIONS OF VIRGINIA, INC., FRONTIER COMMUNICATIONS OF WISCONSIN, LLC, FRONTIER COMMUNICATIONS-MIDLAND, INC., FRONTIER COMMUNICATIONS-PRAIRIE, INC., FRONTIER-COMMUNICATIONS-SCHUYLER, INC., FRONTIER MIDSTATES INC., FRONTIER NORTH INC., FRONTIER WEST VIRIGINIA INC., NAVAJO COMMUNICATIONS COMPANY, INC., RIB LAKE TELECOM, INC., THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, FRONTIER CALIFORNIA INC., FRONTIER FLORIDA LLC, FRONTIER SOUTHWEST INCORPORATED,

      Defendants.

## COMPLAINT

Plaintiff AT&T Enterprises, LLC ("AT&T") alleges as follows:

1. Plaintiff AT&T purchases telecommunications services from Defendants (collectively, "Frontier") under a wholesale contract that explicitly guaranteed AT&T would pay discounted "flat" rates. Frontier has breached its fundamental obligation under that contract to charge AT&T those rates. As a result of its breach, Frontier has already overcharged AT&T by

2

millions of dollars — and has made clear it will overcharge AT&T by many millions more — forcing AT&T to file this lawsuit.

2. Under the contract AT&T's predecessor (AT&T Corp.) entered in 2021, Frontier agreed to bill AT&T for particular services at specified "flat" monthly recurring rates. While these flat rates could increase over time, the contract limits each rate increase and caps the maximum rates Frontier can charge, keeping the rates paid by AT&T relatively stable.

3. The contract anticipates that Frontier will update its billing systems to bill AT&T the contract's flat rates, rather than the higher rates in Frontier's Interstate Service Guides. But Frontier has taken no steps to do so, rejecting AT&T's offer to fund the necessary billing system updates.

4. Even before Frontier makes those updates, the contract guarantees that AT&T will ultimately pay only the flat rates, through a quarterly credit process. Frontier may initially bill AT&T, and AT&T will initially pay, the monthly recurring rates in Frontier's Interstate Service Guides (which the contract calls the "gross" rates). But AT&T is then entitled to quarterly credits based on the difference between the higher gross rates and the lower flat rates. But for the timing of the AT&T's payments and its receipt of the credits, these contract provisions are intended to put AT&T in the position it would have been if Frontier's billing system had been capable of directly billing the flat rates in the first instance.

5. Frontier has been raising its Interstate Service Guide rates multiple times per year and by 25% or more each time. The contract allows Frontier to bill AT&T the increased rates as soon as they go into effect, subject to its obligation to provide the quarterly credits that effectively reduce AT&T's charges to the agreed-upon flat rates. But when Service Guide rate increases occur in the middle of a billing cycle, Frontier excludes the partial-month increased

3

rate amount from its quarterly credit calculations, thereby effectively depriving AT&T of the agreed upon flat rates. Moreover, Frontier can opportunistically time its rate increases to occur mid-billing cycle to maximize the amount by which it overcharges AT&T.

6. Frontier's contract violation is costly to AT&T. In the first quarter of 2024, Frontier refused to provide AT&T more than $7 million in credits owed under the contract. Frontier thus overcharged AT&T more than the agreed-upon flat rates by that amount for the quarter. And given Frontier's repeated rate increases, AT&T projects that Frontier will refuse substantially more in owed credits over time, imposing more overcharges. In the second quarter of 2024, Frontier has indicated it will continue to refuse AT&T credits, which will exceed $16 million. The harm to AT&T will continue every quarter until the end of the contract.

7. Meanwhile, Frontier leaves AT&T with little recourse to address Frontier's violation of the contract. While the dispute over the credit calculation is unresolved, Frontier further violates the contract by refusing to provide any of the quarterly credits to AT&T — *even the amounts Frontier concedes it owes*. In the first quarter of 2024, Frontier refused to provide nearly $155 million in undisputed credits owed to AT&T until AT&T gave up its claim to more than $7 million in credits due from Frontier's partial-month rate increases. Frontier's continual rate increases mean that the undisputed credit amounts that Frontier refuses to release will also grow substantially.

8. Frontier's contract violations deny AT&T the rate stability Frontier promised. Frontier has made clear that it will continue these contract breaches in future quarters absent court intervention. AT&T therefore seeks a declaratory judgment and injunctive relief compelling Frontier to calculate the quarterly credits correctly and to release undisputed credit amounts even if calculation disputes persist.

## PARTIES

9. Plaintiff AT&T Enterprises, LLC ("AT&T") is a Delaware limited liability company. Its sole member is AT&T Wireline Holdings, LLC, the sole member of which is AT&T DW Holdings, Inc., a New York corporation with its principal place of business in Texas.

10. Effective May 1, 2024, AT&T Corp. was converted into AT&T Enterprises, LLC. AT&T Enterprises, LLC is thus the successor-in-interest to AT&T Corp.

11. Defendant Frontier Communications ILEC Holdings LLC (formerly known as Frontier Communications ILEC Holdings Inc.) is a Delaware limited liability company. Its sole member is Frontier Communications Corporation, a Delaware corporation with its principal place of business in Norwalk, Connecticut.

12. Defendant Citizens Telecommunications Company of California, Inc. is a California corporation with its principal place of business in Norwalk, Connecticut.

13. Defendant Citizens Telecommunications Company of Illinois is an Illinois corporation with its principal place of business in Norwalk, Connecticut.

14. Defendant Citizens Telecommunications Company of Minnesota, LLC is a Delaware limited liability company. Its sole member is Newtel LLC, the sole member of which is Frontier Communications Corporation.

15. Defendant Citizens Telecommunications Company of Nebraska is a Delaware corporation with a principal place of business in Norwalk, Connecticut.

16. Defendant Citizens Telecommunications Company of Nevada is a Nevada corporation with a principal place of business in Norwalk, Connecticut.

17. Defendant Citizen Telecommunications Company of Tennessee LLC is a Delaware limited liability company. Its sole member is Frontier Communications Corporation.

18. Defendant Citizens Telecommunications Company of the White Mountains, Inc. is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

19. Defendant Citizens Telecommunications Company of Utah is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

20. Defendant Citizens Telecommunications Company of West Virginia is a West Virginia corporation with its principal place of business in Norwalk, Connecticut.

21. Defendant Citizens Utilities Rural Company, Inc. is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

22. Defendant Commonwealth Telephone Company LLC is a Pennsylvania limited liability company. Its sole member is Commonwealth Telephone Enterprises, LLC, the sole member of which is Frontier Communications Corporation.

23. Defendant Frontier Communications of America, Inc. is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

24. Defendant Frontier Communications of Breezewood, LLC is a Pennsylvania limited liability company. Its sole member is Frontier Subsidiary Telco LLC, the sole member of which is Frontier Communications Corporation.

25. Defendant Frontier Communications of Canton, LLC is a Pennsylvania limited liability company. Its sole member is Frontier Subsidiary Telco LLC, the sole member of which is Frontier Communications Corporation.

26. Defendant Frontier Communications of Depue, Inc. is an Illinois corporation with its principal place of business in Norwalk, Connecticut.

27. Defendant Frontier Communications of Georgia LLC is a Georgia limited liability company. Its sole member is Frontier Subsidiary Telco LLC, the sole member of which is Frontier Communications Corporation.

28. Defendant Frontier Communications of Illinois, Inc. is an Illinois corporation with its principal place of business in Norwalk, Connecticut.

29. Defendant Frontier Communications of Indiana LLC is an Indiana limited liability company. Its sole member is Frontier Communications Corporation.

30. Defendant Frontier Communications of Iowa, LLC is an Iowa limited liability company. Its sole member is Frontier Communications Corporation.

31. Defendant Frontier Communications of Lakeside, Inc. is an Illinois corporation with its principal place of business in Norwalk, Connecticut.

32. Defendant Frontier Communications of Lakewood, LLC is a Pennsylvania limited liability company. Its sole member is Frontier Subsidiary Telco LLC, the sole member of which is Frontier Communications Corporation.

33. Defendant Frontier Communications of Michigan, Inc. is a Michigan corporation with its principal place of business in Norwalk, Connecticut.

34. Defendant Frontier Communications of Minnesota, Inc. is a Minnesota corporation with its principal place of business in Norwalk, Connecticut.

35. Defendant Frontier Communications of Mississippi LLC is a Mississippi limited liability company. Its sole member is Frontier Communications Corporation.

36. Defendant Frontier Communications of Mt. Pulaski, Inc. is an Illinois corporation with its principal place of business in Norwalk, Connecticut.

37. Defendant Frontier Communications of Orion, Inc. is an Illinois corporation with its principal place of business in Norwalk, Connecticut.

38. Defendant Frontier Communications of Oswayo River, LLC is a Pennsylvania limited liability company. Its sole member is Frontier Subsidiary Telco LLC, the sole member of which is Frontier Communications Corporation.

39. Defendant Frontier Communications of Pennsylvania, LLC is a Pennsylvania limited liability company. Its sole member is Frontier Subsidiary Telco LLC, the sole member of which is Frontier Communications Corporation.

40. Defendant Frontier Communications of the Carolinas LLC (formerly known as Frontier Communications of the Carolinas Inc.) is a Delaware limited liability company. Its sole member is Frontier Communications ILEC Holdings LLC, the sole member of which is Frontier Communications Corporation.

41. Defendant Frontier Communications of the South, LLC (formerly known as Frontier Communications of Lamar County, LLC) is an Alabama limited liability company. Its sole member is Frontier Subsidiary Telco LLC, the sole member of which is Frontier Communications Corporation.

42. Defendant Frontier Communications of the Southwest, Inc. is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

43. Defendant Frontier Communications of Thorntown LLC (formerly known as Frontier Communications of Thorntown, Inc.) is an Indiana limited liability company. Its sole member is Frontier Communications Corporation.

44. Defendant Frontier Communications of Virginia, Inc. is a Virginia corporation with its principal place of business in Norwalk, Connecticut.

45. Defendant Frontier Communications of Wisconsin, LLC is a Wisconsin limited liability company. Its sole member is Frontier Communications Corporation.

46. Defendant Frontier Communications-Midland, Inc. is an Illinois corporation with its principal place of business in Norwalk, Connecticut.

47. Defendant Frontier Communications-Prairie, Inc. is an Illinois corporation with its principal place of business in Norwalk, Connecticut.

48. Defendant Frontier Communications-Schuyler, Inc. is an Illinois corporation with its principal place of business in Norwalk, Connecticut.

49. Defendant Frontier Midstates Inc. is a Georgia corporation with its principal place of business in Norwalk, Connecticut.

50. Defendant Frontier North Inc. is a Wisconsin corporation with its principal place of business in Norwalk, Connecticut.

51. Defendant Frontier West Virginia Inc. is a West Virginia corporation with its principal place of business in Norwalk, Connecticut.

52. Defendant Navajo Communications Company, Inc. is a New Mexico corporation with its principal place of business in Norwalk, Connecticut.

53. Defendant Rib Lake Telecom, Inc. is a Wisconsin corporation with its principal place of business in Norwalk, Connecticut.

54. Defendant The Southern New England Telephone Company is a Connecticut corporation with its principal place of business in Norwalk, Connecticut.

55. Defendant Frontier California Inc. is a California corporation with its principal place of business in Norwalk, Connecticut.

56. Defendant Frontier Florida LLC is a Florida limited liability company. Its sole member is Frontier Communications Corporation.

57. Defendant Frontier Southwest Incorporated is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

## JURISDICTION AND VENUE

58. This Court has subject-matter jurisdiction over AT&T's claims against Frontier pursuant to 28 U.S.C. § 1332. AT&T is a citizen of New York and Texas. In contrast, the Frontier defendants are citizens of California, Connecticut, Delaware, Georgia, Illinois, Michigan, Minnesota, Nevada, New Mexico, Virginia, West Virginia, and Wisconsin. Therefore, AT&T and the Frontier defendants are citizens of different states. In addition, the amount in controversy exceeds $75,000.

59. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because by contract the parties "irrevocably consent[] to the personal jurisdiction of the courts located in the Borough of Manhattan, State of New York, to the extent necessary to give effect to or to enforce the provisions of the Agreement and waive[] any defense of improper venue." Master Services Agreement § 28.1.

## FRONTIER AGREES TO CHARGE AT&T FLAT RATES FOR TELECOMMUNICATIONS SERVICES

60. In 2021, AT&T entered into an agreement with Frontier to set flat rates for certain telecommunications services that AT&T purchases from Frontier. To that end, the parties signed a Master Services Agreement, which incorporates by reference a TDM Service Schedule, that sets these flat rates.[1]

---

[1] "TDM" refers to "time division multiplexing," a type of telecommunications technology that allows multiple voice calls or data streams to be transmitted over the same communications facility. TDM services include DS1 service, which can carry up to 24 simultaneous voice calls

61. As relevant to this dispute, Frontier generally publishes the rates, terms, and conditions for the TDM services that AT&T purchased under the contract in its Interstate Service Guides.[2] Frontier increases these rates by amending its Interstate Service Guides, often multiple times per year.

62. The contract provides AT&T price stability in the form of Flat Rate Monthly Recurring Charges (or "MRCs"). *See* TDM Service Schedule § 7.1 (stating that "the Flat Rate MRCs that apply" to qualifying services, "[n]otwithstanding anything that may be to the contrary in the Agreement or applicable [Interstate Service Guide]"). As Frontier increased the rates in its Interstate Service Guides, the Flat Rate MRCs would increase, but not by as much as the Interstate Service Guide rates and subject to hard upper limits for each contract year. *See id.* § 7.1.2.

63. The parties contemplated that Frontier would modify its billing systems to simply bill AT&T the Flat Rate MRCs. "Unless and until" Frontier was able to update its systems to do this, however, the contract allowed Frontier to bill AT&T at the monthly recurring rates in its Interstate Service Guide rates — which the agreement calls the Gross Rate MRCs, *see* TDM Service Schedule § 10.27 — but required Frontier to "apply a quarterly credit to true up" the charges "to the applicable Flat Rate MRC[s]." TDM Service Schedule §§ 7.1, 8.

64. The quarterly credits are calculated based on "the difference between the Gross Rate MRC and the Flat Rate MRC." *Id.* § 8. The credits thus represent the difference between

---

(1.544 Mbps of data), and DS3 service, which can carry up to 672 simultaneous voice calls (44.736 Mbps of data), the equivalent of 28 DS1s. TDM services are generally considered an older, "legacy" service today.

[2] The Federal Communications Commission detariffed these services in an order issued in 2017. *See generally* Report and Order, *Business Data Services in an Internet Protocol Environment*, 32 FCC Rcd 3459 (2017). Frontier posts its current Interstate Service Guides on its website. *See* https://wholesale.frontier.com/pricing-guides/interstate-service-guide.

the Flat Rate MRCs the contract requires AT&T to pay and the Interstate Service Guide rates that Frontier's systems bill by default. The credits thus restore AT&T to the position it would have been in had Frontier updated its billing systems to bill the Flat Rate MRCs (although AT&T must pay the higher rates when billed, receiving the credits only after the end of the quarter).

65. The contract directs the parties to "work cooperatively to determine and apply the Quarterly Credit." *Id.* § 8.2. That cooperative process is supposed to start with Frontier calculating the Billed Qualifying Service Revenue — which equals the Gross Rate MRC multiplied by the quantity AT&T purchased — and the amount of the Quarterly Credit within 30 days after the end of the quarter. *See id.* § 8.2.1. The parties are then to "meet and confer" in an effort to "agree upon the amount of the Quarterly Credit." *Id.* § 8.2.2. Once AT&T provides its "written concurrence to the amount of the Quarterly Credit," "Frontier will provide the Quarterly Credit" to AT&T. *Id.* § 8.2.2–8.2.3. Where the parties have reached agreement and AT&T "provides its Written Concurrence, the Quarterly Credit" amount is "not subject to Payment Dispute by AT&T, back-billing by Frontier, or other dispute or claim of any kind," subject to certain exceptions not relevant here. *Id.* § 8.2.2.

### FRONTIER'S BREACHES OF THE CONTRACT

66. Three years into the life of the contract, Frontier still has not updated its billing systems to directly bill AT&T the Flat Rate MRCs. Indeed, it has not even started to do so, refusing AT&T's offer to fund the necessary work on billing system upgrades. As a result, AT&T still depends on the quarterly credits to receive the promised flat rates.

67. Yet Frontier is taking advantage of its refusal to update its billing systems to charge AT&T the agreed-upon Flat Rate MRCs by breaching the contract in two ways that are denying AT&T the benefit of its bargain.

68. First, when calculating the quarterly credits, Frontier is excluding rate increases that it imposes in the middle of a monthly billing cycle. Yet the contract clearly states that such mid-cycle increases are part of the Gross Rate MRC that is used to calculate the billing credits. First, section 5.1.3 states that, while Frontier is billing AT&T its Interstate Service Guide rates, Frontier may impose those rate increases "upon the effectiveness of [the] change" to the Interstate Service Guide. TDM Service Schedule § 5.1.3. Section 5.1.3 describes these rate increases as "a Gross Rate MRC Increase." *Id.* Second, section 7.1.2.3.2 also describes the mid-cycle rate increases as "a Gross Rate MRC Increase." That section contrasts such "a Gross Rate MRC Increase," which may take place at any time, and increases to the Flat Rate MRCs, which "shall be effective as of the first Day of the Plan Year Quarter following the effective date of the associated Gross Rate MRC Increase (i.e., the date on which the applicable [Interstate Service Guide] . . . rate change goes into effect)." *Id.* § 7.1.2.3.2.

69. When Frontier's Service Guide rates increase in the middle of AT&T's monthly billing cycle, AT&T owes Frontier (before the quarterly credits are applied) a pro-rated amount of the old and new monthly recurring charges. Thus, a service AT&T purchased cost $1000 on June 1, but $1400 effective June 16, the total cost for that service in June (before the quarterly credits) would be $1200 — $500 for the first half of the month and $700 for the second half. Frontier could effectuate that rate increase on its bills by including each of the monthly recurring charges in the same section of the bill and pro-rating them. That is, both the original $1000 monthly recurring charge and the new $1400 monthly recurring charge would appear in the MRC portion of the bill, with each rate multiplied by 50% to yield the $1200 monthly recurring charge for that month.

13

70. Instead, Frontier has chosen to keep the full initial monthly recurring charge ($1000 in our example) in the MRC section of the bill. It then effectuates the increased rate by calculating the partial-month MRC increase ($200 in our example) and putting that amount not in the MRC portion of the bill, but in a section labeled "Other Charges and Credits."

71. The contract excludes from Billed Qualifying Service Revenue — defined, as explained above, the product of the Gross Rate MRC and the quantity AT&T purchased — "any amount that appears in the section of Frontier's invoice typically labeled *Other Charges and Credits*." *Id.* § 5.3.4. Based on this contract language, Frontier claims that it can ignore the partial-month increase in calculating the credits due to AT&T.

72. Frontier is wrong. The contract expressly identifies such partial-month rate increases as Gross Rate MRC increases to which quarterly credits apply. *See id.* §§ 5.1.3, 7.1.2.3.2. Nothing in the contract allows Frontier to transform a rate increase that the contract identifies as a Gross Rate MRC increase into an "other charge" that the contract excludes from the credit calculation, which is based on the difference between the Gross Rate MRC and the Flat Rate MRC. Frontier's position also violates the basic requirement in the contract that, "[n]otwithstanding anything that may be to the contrary in the Agreement, the Flat Rate MRCs" are what AT&T will pay with Frontier "apply[ing] a quarterly credit to true up to the applicable Flat Rate MRC." *Id.* § 7.1.

73. The effect of Frontier's actions is to deprive AT&T millions of dollars in credits — more than $7 million in the first quarter of 2024 — and to force AT&T to pay far more than the Flat Rate MRCs that Frontier agreed to charge AT&T. Based on Frontier's historic rate increases, AT&T projects that amount to increase to $16 million for the second quarter of 2024 and to continue to increase quarterly through the remaining life of the contract.

74. AT&T objected to Frontier's exclusion of that more than $7 million from Frontier's calculation of the first quarter of 2024 credits. But AT&T agreed with Frontier that at least nearly $155 million in credits were due to AT&T. AT&T provided its written concurrence to that undisputed amount. But Frontier refused to provide AT&T with any of that undisputed amount unless AT&T agreed to forfeit its claim to the additional more than $7 million in credits.

75. Contrary to Frontier's claims, the contract does not contemplate such an all-or-nothing approach to the quarterly credits. Once the parties reach agreement on credit amounts, those agreed amounts cannot be subject to future disputes by either party and Frontier must provide the credits to AT&T. *See id.* §§ 8.2.2, 8.2.3. But those provisions do not allow Frontier to hold the lion's share of the credits hostage to AT&T's abandonment of additional credits to which the contract entitles it.

76. For the first quarter of 2024, AT&T agreed to give up the more than $7 million in credits to receive the $155 million Frontier was improperly withholding. AT&T's decision does not mean Frontier is free to continue breaching the contract. Like most contracts, this one contains an anti-waiver provision, so that "[a] failure or delay of either Party to enforce any of the provisions of the Agreement . . . shall in no way be construed to be a waiver of such provisions," and "[a] consent to waiver of or excuse for a breach or default . . . shall not constitute a consent to, waiver of, or excuse for any different or subsequent breach or default." Master Service Agreement § 23.

77. Frontier has made clear that it intends to continue miscalculating the quarterly credits and to continue to withhold all the credits due while AT&T disputes any part of it.

## CLAIMS FOR RELIEF

### Count I: Breach of Contract
### (Declaratory Judgment and Injunctive Relief)

78. AT&T repeats and realleges every allegation of this Complaint as if set forth again in full.

79. Frontier and AT&T have agreed that AT&T will purchase qualifying services from Frontier at Flat Rate MRCs, "[n]otwithstanding anything that may be to the contrary" in either the contract or Frontier's Interstate Service Guides and that Frontier will "apply a quarterly credit to true up to the applicable Flat Rate MRC." TDM Service Schedule § 7.1.

80. Frontier is refusing to give AT&T all of the credits necessary to effectuate that true up. It is instead treating rate increases that occur during the middle of a billing cycle as Other Charges and Credits, even though the contract expressly defines them as Gross Rate MRC Increases — and requires Frontier to calculate the credits based on the difference between the Gross Rate and Flat Rate MRCs.

81. AT&T and Frontier have an ongoing dispute about Frontier's calculations of quarterly credits.

82. As a result of the foregoing, a real, actual, and present controversy exists between the parties.

83. AT&T seeks a judicial determination of its rights pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Specifically, AT&T seeks a declaration that Frontier's calculations of quarterly credits must include all increases in Frontier's Interstate Service Guide rates billed to AT&T, regardless of when in the billing cycle the rate increases took effect and regardless of how Frontier characterizes the changes on its bills to AT&T.

### Count II: Breach of Contract
### (Declaratory Judgment and Injunctive Relief)

84. AT&T repeats and realleges every allegation of this Complaint as if set forth again in full.

85. The contract obligates the parties to "work cooperatively to determine and apply the Quarterly Credit," including to "meet and confer" in an effort to "agree upon the amount of the Quarterly Credit." TDM Service Schedule §§ 8.2, 8.2.2. Where the parties have reached agreement and AT&T "provides its Written Concurrence, the Quarterly Credit" amount is "not subject to . . . dispute" by either party. *Id.* § 8.2.2. Nothing in the contract allows Frontier to withhold agreed-upon credits while a dispute is pending about other credits AT&T claims are due.

86. In violation of the contract, Frontier refuses to release undisputed credit amounts unless and until AT&T forfeits its claim to additional, disputed credit amounts.

87. Frontier has made clear that it will continue to withhold undisputed credits in future quarters should AT&T contend that the undisputed amount does not reflect all the credits due to AT&T. AT&T continues to dispute that Frontier may withhold undisputed credits to which AT&T is contractually entitled to gain leverage in a dispute over additional credits due.

88. AT&T and Frontier have an ongoing dispute about Frontier's obligations to release AT&T's quarterly credits.

89. As a result of the foregoing, a real, actual, and present controversy exists between the parties.

90. AT&T seeks a judicial determination of its rights pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Specifically, AT&T seeks a declaration that Frontier must release AT&T's quarterly credits by its the contractual deadlines to the extent that the parties

have concurred in the credit amount, regardless of whether some additional credit amount remains in dispute.

## PRAYER FOR RELIEF

WHEREFORE, AT&T respectfully prays for relief and judgment, and requests that the Court:

A. Enter a declaratory ruling in favor of AT&T and against Frontier that Frontier's calculation of AT&T's quarterly credits must account for all increases in its Interstate Service Guide rates billed to AT&T, regardless of when in the billing cycle these rate increases occurred and regardless of how Frontier characterizes the rate increase on its bills to AT&T;

B. Enter a declaratory ruling in favor of AT&T and against Frontier that Frontier must release AT&T's quarterly credits by the contractual deadlines to the extent that the parties have concurred in the credit amount, regardless of whether some additional credit amount remains in dispute;

C. Enter injunctive relief compelling Frontier to comply with the Court's declaration of Frontier's obligations and of AT&T's rights under the contract;

D. Award AT&T its costs and such other and further relief as the Court deems just and proper.

Dated:  August 6, 2024

Respectfully submitted,

 /s/ *Andrew M. Hetherington*
Andrew M. Hetherington
Scott H. Angstreich (*pro hac vice* to be filed)
Alyssa J. Picard (*pro hac vice* to be filed)
Kellogg, Hansen, Todd,
 Figel & Frederick, P.L.L.C.
1615 M Street NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
ahetherington@kellogghansen.com
sangstreich@kellogghansen.com
apicard@kellogghansen.com

*Counsel for Plaintiff AT&T Enterprises, LLC*